1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIUBOV DIAS,<br><br>                                    Plaintiff,<br><br>v.<br><br>BURBERRY LIMITED and BRADLEY MOORE,<br><br>                                    Defendants. | Case No. 21-cv-192-MMA (JLB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>[Doc. Nos. 13, 19] |

        Liubov Dias ("Plaintiff") alleges that Defendants Burberry Limited ("Burberry") and Bradley Moore ("Moore") (collectively, "Defendants") discriminated and retaliated against Plaintiff. *See* Doc. No. 1-2 ("Compl.") ¶¶ 10, 20.  Defendants removed this action from the Superior Court of California, County of San Diego, to the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1441, 1446 and on the basis of diversity jurisdiction under 28 U.S.C. § 1332.  *See* Doc. No. 1.

        Two motions are pending before the Court.  *See* Doc. Nos. 13, 19.  Defendants move to compel arbitration pursuant to the Federal Arbitration Act.  *See* Doc. No. 13 at

1

2.[1]  Plaintiff filed an opposition to Defendants' motion,[2] and Defendants replied.  *See* Doc. Nos. 18, 20.  Plaintiff moves to remand the action to state court pursuant to 28 U.S.C. § 1447(d).  *See* Doc. No. at 19.  Defendants filed an opposition to Plaintiff's motion, but Plaintiff did not file a reply.  *See* Doc. No. 22.  The Court found the matters suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1.  *See* Doc. Nos. 21, 23.  For the reasons set forth below, the Court **DENIES** Plaintiff's motion to remand and **GRANTS** Defendants' motion to compel arbitration.

## I. Background

This action arises from an employment dispute where Plaintiff alleges Defendants discriminated and retaliated against Plaintiff.  *See* Compl ¶¶ 10, 20.  Plaintiff worked for Defendants from October 2014 until May 20, 2019.  *Id.* ¶ 6.  Plaintiff's first position was Sales Associate and her last position was Floor Supervisor.  *Id.*  Between her starting and ending positions, Plaintiff had various promotions.  *Id.* ¶¶ 6–8.  Plaintiff earned high scores on her yearly reviews and improved upon her areas for growth.  *Id.* ¶ 8.

In May 2018, Plaintiff told Defendants about her pregnancy.  *Id.* ¶ 9.  In Fall 2018, Plaintiff was placed under a new acting Manager.  *Id.* ¶ 10.  Under the acting manager, "Plaintiff experienced [d]iscrimination and [r]etaliation."  *Id.*[3]  On November 20, 2018,

---

[1] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

[2] Defendants argue that Plaintiff consented to their motion by filing an untimely opposition brief.  *See* Doc. No. 20 at 2–3.  The Court has discretion to consider an untimely brief in the interest of justice.  *See* CivLR 1.1.d; *see also Sargent v. S. California Edison 401(k) Sav. Plan*, No. 20-cv-1296-MMA (RBB), 2020 WL 6060411, at *1 n.3 (S.D. Cal. Oct. 14, 2020); *City of San Diego v. Indian Harbor Ins. Co.*, No. 12-cv-2604-W (WVG), 2013 WL 3873139, at *1 n.1 (S.D. Cal. July 25, 2013); *Bailey v. Hollister*, No. 07-cv-1143-JM (NLS), 2008 WL 4820992, at *1 (S.D. Cal. Nov. 3, 2008); *Aerus LLC v. ProTeam, Inc.*, No. 05-cv-1065-B (WMC), 2007 WL 2405666, at *2 (S.D. Cal. Aug. 13, 2007).  Here, Plaintiff's untimely opposition brief has not prejudiced Defendants.  Accordingly, the Court considers Plaintiff's opposition brief.

[3] Plaintiff refers to Burberry and Moore collectively as "Defendants" throughout the Complaint.  *E.g.*, Compl. ¶ 6.  Plaintiff does not directly allege who Moore is or his role in the underlying allegations.

2

Plaintiff and Defendants signed an agreement that Plaintiff would be on maternity leave on December 30, 2018 and return June 1, 2019.  *Id.* ¶ 11.

On December 27, 2018, Defendants encouraged Plaintiff to apply for a vacant Assistant Manager position, but Plaintiff was never called or interviewed.  *Id.* ¶ 12.  On December 30, 2018, Plaintiff started her maternity leave.  On March 11, 2019, Defendants told Plaintiff that the Assistant Manager position was eliminated and, instead, there would be two Department Managers.  *Id.* ¶ 14.  Defendants asked Plaintiff if she would like to apply for the new position, and she applied.  *Id.*  However, Plaintiff was never called or interviewed regarding her application.  *Id.*

On March 23, 2019, Defendants informed Plaintiff that her position was eliminated and offered her a Service Lead position, which would involve a pay cut.  *Id.* ¶ 15.  On April 18, 2019, Plaintiff learned that the Department Manager position that she was encouraged to apply for was filled.  *Id.* ¶ 16.  On May 20, 2019, Plaintiff decided not to accept the Service Lead position offer because she had a baby and could not afford to take the pay cut.  *Id.* ¶ 17.

On December 23, 2020, Plaintiff filed her Complaint in Superior Court of California, County of San Diego.  *See generally id.*  Plaintiff brings seven causes of action against Defendants: (1) sex discrimination under Cal. Gov't Code § 12940(a), (2) pregnancy discrimination under Cal. Gov't Code § 12945, (3) failure to prevent discrimination under Cal. Gov't Code § 12940(k), (4) failure to engage in an interactive process under Cal. Gov't Code § 12940(n), (5) retaliation under Cal. Lab. Code § 1102.5, (6) intentional infliction of emotional distress, and (7) wrongful termination in violation of public policy.  *See* Compl. ¶¶ 22–65.  On February 1, 2021, Burberry removed the

---

However, Burberry provides clarity in its Notice of Removal.  Burberry hired Moore as a manager in the San Diego store where Plaintiff worked.  *See* Mendez Decl., Doc. No. 1-3 ¶ 6.  Moore became Plaintiff's manager around October 2018.  *See id.*

action to this Court.  *See generally* Doc. No. 1.  Now, Defendants move to compel arbitration, and Plaintiff moves to remand the action to state court.  *See* Doc. Nos. 13, 19.

## II. MOTION TO REMAND

The Court proceeds by first addressing Plaintiff's motion to remand because it challenges the Court's subject matter jurisdiction.

### A. Legal Standard

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute."  *Id.* at 377.  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  The party seeking federal jurisdiction bears the burden to establish jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182–83 (1936)).  Generally, subject matter jurisdiction is based on the presence of a federal question, *see* 28 U.S.C. § 1331, or on complete diversity between the parties, *see* 28 U.S.C. § 1332.

Pursuant to 28 U.S.C. § 1331, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The existence of federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A well pleaded complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27 (1983).

Pursuant to 28 U.S.C. § 1332(a)(1), a federal district court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the dispute is between citizens of different states.  28 U.S.C. § 1332(a)(1).  The Supreme Court has interpreted § 1332 to require "complete

diversity of citizenship," meaning each plaintiff must be diverse from each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  If a matter is removable solely on the basis of diversity jurisdiction pursuant to § 1332, the action may not be removed if any properly joined and served defendant is a citizen of the forum state.  *See* 28 U.S.C. § 1441(b)(2).

Additionally, 28 U.S.C. § 1441(a) provides for removal of a civil action from state to federal court if the case could have originated in federal court.  The removal statute is construed strictly against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)).

**B. Discussion**

Arguing that removal was improper because Plaintiff and Moore are California residents, Plaintiff contends that she makes factual, actionable allegations against Moore. *See* Doc. No. 19 at 8, 15.  Plaintiff asserts that Defendants have not met their burden to show that Moore is fraudulently joined in this action.  *See id.* at 16, 17.  As to the amount in controversy requirement, Plaintiff claims that Defendants do not establish the requisite amount in their Notice of Removal.  *See id.* at 17.  Curiously, Plaintiff also argues that there would be no prejudice to Defendants to try the case in state court under a personal jurisdiction framework.  *See id.* at 19.  Defendants respond that Plaintiff's motion "relies on conclusory and sometimes patently false statements and high-level, non-specific arguments."  Doc. No. 22 at 8.  Defendants contend that the Court should disregard Moore's citizenship because of fraudulent joinder and that the amount in controversy requirement is satisfied.  *See id.* at 11, 14–23, 23–30.  Plaintiff does not respond directly to Defendants' claim-specific arguments presented in the Notice of Removal or opposition brief.

**1. Whether Moore Was Fraudulently Joined**

1   "In determining whether there is complete diversity, district courts may disregard

2   the citizenship of a non-diverse defendant who has been fraudulently joined." *GranCare,*

3   *LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) (citing C*hesapeake & Ohio Ry. Co. v.*

4   *Cockerell*, 232 U.S. 146, 152 (1914)).  "There are two ways to establish fraudulent

5   joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the

6   plaintiff to establish a cause of action against the non-diverse party in state court.'"  *Id.*

7   (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).  The

8   fraudulent joinder analysis is a "jurisdictional inquiry," not an adjudication on the merits.

9   *Id.* at 549.  In *GranCare*, the Ninth Circuit drew attention to the difference between the

10  standard for a Rule 12(b)(6) motion and fraudulent joinder.  *See id.*  The court explained,

11  "the test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not

12  equivalent.  A claim against a defendant may fail under Rule 12(b)(6), but that defendant

13  has not necessarily been fraudulently joined."  *Id.*

14      A federal court must find joinder proper and remand the case to state court "if there

15  is a *possibility* that a state court would find that the complaint states a cause of action

16  against any of the resident defendants."  *Id.* at 548 (quoting *Hunter*, 582 F.3d at 1046).

17  Furthermore, "[f]raudulent joinder must be proven by clear and convincing evidence."

18  *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

19  "[T]he district court must consider . . . whether a deficiency in the complaint can possibly

20  be cured by granting the plaintiff leave to amend."  *GranCare*, 889 F.3d at 550.  This

21  standard reflects that a defendant claiming fraudulent joinder "bears a 'heavy burden'

22  since there is a 'general presumption against finding fraudulent joinder.'"  *Id.* at 548

23  (brackets omitted) (quoting *Hunter*, 582 F.3d at 1044).

24      Courts have previously upheld rulings of fraudulent joinder "where a defendant

25  presents extraordinarily strong evidence or arguments that a plaintiff could not possibly

26  prevail on her claims against the allegedly fraudulently joined defendant."  *Id.* at 548; *see*

27  *also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (upholding a

28  ruling of fraudulent joinder where defendant's conduct was privileged under state law).

Courts have also "declined to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." *GranCare*, 889 F.3d at 548–49.

Considering these guiding principles, the Court turns to whether Plaintiff states a *possible* claim against Moore or whether Defendants carry their burden to show fraudulent joinder.

### i. FEHA Claims – First, Second, Third, and Fourth Causes of Action

Plaintiff's first four cases of action are brought under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900–12996: (1) sex discrimination under Cal. Gov't Code § 12940(a), (2) pregnancy discrimination under Cal. Gov't Code § 12945, (3) failure to prevent discrimination under Cal. Gov't Code § 12940(k), and (4) failure to engage in an interactive process under Cal. Gov't Code § 12940(n). *See* Compl. ¶¶ 22–48.

Individual employees cannot be held liable for discrimination under Cal. Gov't Code § 12940(a), 12940(k), § 12940(n), or 12945. "FEHA makes it unlawful for an 'employer' to discriminate, retaliate, or fail to prevent discrimination against a person." *Ames v. City of Novato*, No. 16-cv-02590-JST, 2016 WL 6024587, at *5 (N.D. Cal. Oct. 14, 2016) (citing Cal. Gov't Code § 12940(a), 12940(h), 12940(k)); *see also Reno v. Baird*, 957 P.2d 1333, 1335 (Cal. 1998) ("The FEHA, however, prohibits only 'an employer' from engaging in improper discrimination."). Section 12940(a) makes it unlawful for an "employer" to discriminate on sex and other statuses. *See* Cal. Gov't Code § 12940(a). Section 12945 makes it unlawful for an "employer" to fail to make certain accommodations on the basis of an employee's pregnancy. *See id.* § 12945. Section 12940(k) makes it unlawful for an "employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment" to fail to take reasonable steps to prevent discrimination and harassment. *Id.* § 12940(k). Section 12940(n) makes it unlawful for an "employer" to not engage in

an interactive process with an employee to determine accommodations in response to an accommodation request. *See id.* § 12940(n).

Here, Moore is not an employer. Rather, Moore was Plaintiff's Manager at Burberry's San Diego store. *See* Compl. ¶ 10; Doc. No. 1 ¶¶ 23–24; Mendez Decl., Doc. No. 1-3 ¶ 6. Plaintiff does not challenge Moore's status with Burberry or provide authority to rebut Defendants' cited authority on the unviability of these claims. Plaintiff cannot hold Moore liable as an individual supervisory employee for discrimination, failure to prevent discrimination, or failure to engage in an interactive process. *See Mohammed v. Am. Airlines, Inc.*, No. C 19-01946 WHA, 2019 WL 3577160, at *2 (N.D. Cal. Aug. 6, 2019) (finding that the defendants have met their burden on a motion to remand to show that the plaintiff cannot support the FEHA claims against an individual supervisor); *Ames*, 2016 WL 6024587, at *5 (dismissing claims against an individual supervisory employee with prejudice); *see also Reno*, 957 P.2d at 1335, 1335–36, 1343, 1347 (holding that individual supervisory employees cannot be held liable for FEHA discrimination claims). Accordingly, the Court finds that it is not possible for Plaintiff to plead her FEHA causes of action against Moore.

### ii. Retaliation Under Cal. Lab. Code § 1102.5 – Fifth Cause of Action

Plaintiff's fifth cause of action is retaliation under Cal. Lab. Code § 1102.5. *See* Compl. ¶¶ 49–53. Section 1102.5 makes it unlawful for an "employer, or any person acting on behalf of the employer" to retaliate against an employee for disclosing information pertaining to a violation of or noncompliance with a statute or regulation. *See* Cal. Lab. Code § 1102.5(b). "Labor Code section 1102.5 is a whistleblower statute, the purpose of which is to 'encourage workplace whistle-blowers to report unlawful acts without fearing retaliation.'" *Soukup v. L. Offs. of Herbert Hafif*, 139 P.3d 30, 48 (Cal. 2006) (brackets omitted) (quoting *Green v. Ralee Eng'g Co.*, 960 P.2d 1046, 1052 (Cal. 1998)).

"[T]he language of Cal. Lab. Code § 1102.5, while broader than that contained in [FEHA], has consistently been construed by district courts in the Ninth Circuit to

preclude individual liability by a manager or other non-employer." *Gonzalez v. Trojan Battery Co.*, LLC, No. 2:20-cv-02735-SVW-MRW, 2020 WL 2857487, at *2 (C.D. Cal. June 2, 2020); *see also CTC Glob. Corp. v. Huang*, No. SACV 17-02202 AG (KESx), 2018 WL 4849715, at *4 (C.D. Cal. Mar. 19, 2018) ("Like the relevant statutes in *Reno* and *Jones*, it appears the California legislature intended simply to extend an employer's liability, rather than to create a new category (supervisors) of potential defendants."); *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1030 (S.D. Cal. 2017) ("Based on *Reno* and *Jones*, the court concludes that if the California Supreme Court were ever to consider the issue, it would hold that there can be no individual liability under section 1102.5"); *Tillery v. Lollis*, No. 1:14-cv-02025-KJM-BAM, 2015 WL 4873111, at *10 (E.D. Cal. Aug. 13, 2015) ("Absent any authority or legislative intent to the contrary, and consistent with the California Supreme Court's decisionmaking in this area, this court finds individuals are not susceptible to liability under section 1102.5.").

As with the FEHA claims, Plaintiff fails provide authority to rebut Defendants' cited authority on the unviability of her retaliation claim. Plaintiff cannot hold Moore liable as individual supervisory employee for retaliation under section 1102.5. *See, e.g.*, *See Gonzalez*, 2020 WL 2857487, at *2. Accordingly, the Court finds that it is not possible for Plaintiff to plead her retaliation cause of action against Moore.

### iii. Intentional Infliction of Emotional Distress – Sixth Cause of Action

Plaintiff's sixth cause of action is intentional infliction of emotional distress. *See* Compl. ¶¶ 54–60. Under California law, a claim for intentional infliction of emotional distress exists when there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Evans v. City of San Diego*, 913 F. Supp. 2d 986, 1000 (S.D. Cal. 2012)

(quoting *Hughes v. Pair*, 209 P.3d 963, 976 (Cal. 2009)); *see also Christensen v. Superior Ct.*, 820 P.2d 181, 202 (Cal. 1991).

In applying this cause of action to the context of personnel management, the California Court of Appeal has held that

> [m]anaging personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society.  A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged.  If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

*See Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 756 (Ct. App. 1996).  "Personnel management actions" include

> hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment.  These are actions of a type necessary to carry out the duties of business and personnel management.  These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment.

*Reno*, 957 P.2d at 1336–37 (quoting *Janken*, 53 Cal. Rptr. 2d at 746).

Here, Plaintiff alleges that she was subject to personnel management actions. Plaintiff avers that she was never given a call or interview for a vacant Assistant Manager position that she was encouraged to apply for; she was informed that the Assistant Manager position was eliminated; she was not given a call or interview for one of the two Department Manager positions; she was told that her position was eliminated and offered a Service Lead position that involved a pay cut; she was informed that the Department

Manager position was filled; and made the decision to reject the Service Lead offer because the pay was insufficient. *See* Compl. ¶¶ 12, 14, 15, 17. These allegations fall under personnel management actions outlined by *Reno* and *Janken*. *See Reno*, 957 P.2d at 1336–37 (quoting *Janken*, 53 Cal. Rptr. 2d at 746). Because personnel management is not outrageous, "[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 53 Cal. Rptr. 2d at 746; *see also Pineda v. Abbott Lab'ys, Inc.*, No. 2:18-cv-03395-SVW-RAO, 2018 WL 3487111, at *4 (C.D. Cal. July 18, 2018) (quoting *Janken*, 53 Cal. Rptr. 2d at 746), *aff'd in part*, 831 F. App'x 238 (9th Cir. 2020). In the event the management decisions were improperly, motivated, Plaintiff's remedy would be a suit against the employer—Burberry—for discrimination. *See id.*

Accordingly, the Court finds that it is not possible for Plaintiff to plead her intentional infliction of emotional distress cause of action against Moore.[4]

### iv. Wrongful Termination in Violation of Public Policy – Seventh Cause of Action

Plaintiff's seventh cause of action is wrongful termination in violation of public policy. *See* Compl. ¶¶ 61–65. Plaintiff grounds her claim under FEHA and the California Constitution. *See id.* ¶ 62 (referring to FEHA and Cal. Const. art. I, § 8).

As to Plaintiff's claim premised on FEHA, her claim fails because she cannot sue an individual supervisor for wrongful discharge in violation of public policy. *See Reno*, 957 P.2d at 1348 ("Because plaintiff may not sue [the defendant] as an individual supervisor under the FEHA, she may not sue her individually for wrongful discharge in violation of public policy."); *see also Chisolm v. 7-Eleven, Inc.*, 383 F. Supp. 3d 1032, 1069 (S.D. Cal. 2019) (quoting *Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131

---

[4] Because the Court finds this analysis sufficient, the Court declines to consider Defendants' alternative arguments premised on the Workers' Compensation Act's exclusivity rule or the failure to plead the claim's elements. *See* Doc. No. 22 at 21–23.

(S.D. Cal. 2007)) ("If a discrimination claim fails, 'plaintiff's cause of action for wrongful termination in violation of public policy fails because it is derivative of plaintiff's statutory claim under Government Code § 12940.'"), *aff'd*, 814 F. App'x 194 (9th Cir. 2020).

To the extent Plaintiff attempts to allege a wrongful termination in violation of public policy under a tort theory, her claim further fails.  Here, there is no employer-employee relationship because Moore is not an employer, which dooms her claim.  *See Miklosy v. Regents of Univ. of California*, 188 P.3d 629, 644 (Cal. 2008) (citing *Tameny v. Atl. Richfield Co.*, 610 P.2d 1330 (Cal. 1980)) ("Plaintiffs, however, overlook the fact that a *Tameny* action for wrongful discharge can only be asserted against an *employer*."); *see also United States ex rel. Lupo, Inc.*, 242 F. Supp. 3d at 1032 (dismissing the wrongful termination claim against the individual defendants).

As to Plaintiff's claim premised on the California Constitution, it is similarly insufficient.  "Courts have found Section 8 as an alternative source of public policy for wrongful termination claims.  Section 8 reflects fundamental and firmly established public policy against employment discrimination based on certain classifications including race and sex."  *Phillips v. St. Mary Reg'l Med. Ctr.*, 116 Cal. Rptr. 2d 770, 779 (Ct. App. 2002) (footnotes omitted) (referring to Cal. Const. art. I, § 8).  Plaintiff fails provide any argument to rebut Defendants' cited authority that a Plaintiff cannot bring a wrongful termination in violation of public policy claim against an individual supervisor.  The Court finds that a plaintiff cannot bring such a claim against an individual supervisor regardless of whether the claim is premised under FEHA, tort, or the California Constitution.

Accordingly, the Court finds that it is not possible for Plaintiff to plead her wrongful termination in violation of public policy cause of action against Moore.

### v. Conclusion

Defendants have met their burden of proving that there is no possibility that Plaintiff could assert her seven claims against Moore.  Therefore, the Court finds that

Moore was fraudulently joined.  In moving forward, the court disregards Moore's citizenship in determining whether there is complete diversity.  *See GranCare, LLC*, 889 F.3d at 548 (citing C*hesapeake & Ohio Ry. Co.*, 232 U.S. at 152) ("In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined.").

### 2. Whether Complete Diversity Exists

The parties' citizenships do not appear to be genuinely disputed for the purposes of determining diversity jurisdiction.  Plaintiff is domiciled in California.  *See* Compl. ¶ 1; Doc. No. 1 ¶ 13; Mendez Decl., Doc. No. 1-3 ¶ 4; Doc. No. 22 at 8, 12.  Burberry is a corporation, and it is incorporated under the laws of New York and has its principal place of business in New York, New York.[5]  *See* Doc. No. 1 ¶ 15; Mendez Decl., Doc. No. 1-3 ¶ 3; Doc. No. 22 at 8–9, 12–13.  Thus, Burberry is a citizen of New York.  *See* 28 U.S.C. § 1332 (c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).  Moore is domiciled in California.  *See* Compl. ¶ Doc. No. 1 at 5; Mendez Decl., Doc. No. 1-3 ¶ 4; Doc. No. 19 at 15; Doc. No. 22 at 8, 12; *see also* Mendez Decl., Doc. No. 1-3 ¶ 6 (stating that Moore was a manager in Burberry's San Diego, California store).  However, the Court disregards Moore's citizenship given that he is fraudulently joined to this action.  *See supra* Section II.B.1.v; *see also GranCare, LLC*, 889 F.3d at 548 (citing C*hesapeake & Ohio Ry. Co.*, 232 U.S. at 152) ("In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined.").  Accordingly, the Court finds that complete diversity exists between Plaintiff and Burberry.

### 3. Whether the Amount in Controversy is Satisfied

---

[5] Based on information and belief, Plaintiff alleges that Burberry's "principal place of business is in the County of San Diego, California." Compl. ¶ 2.  In the Notice of Removal, Burberry states that Plaintiff is incorrect because it is domiciled in New York.  *See* Doc. No. 1 ¶ 15.  Burberry supports this claim with a declaration by its "Vice President, Brand Protection - Global" and references the California Secretary of State's website.  *See id.* ¶¶ 15, 15 n.2; Mendez Decl., Doc. No. 1-3 ¶ 3.  Plaintiff does not dispute Defendants' argument or evidence in her motion.

In the Notice of Removal, Burberry asserts that "based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs."  Doc. No. 1 ¶ 38.  Burberry then proceeds to thoroughly show how the action satisfies the amount in controversy requirement.  *See id.* ¶¶ 39–48.  For economic damages, Burberry points to Plaintiff's desired recovery of lost wages, which totals $80,100.  *See id.* ¶¶ 40, 48.  For emotional distress damages, Burberry looks to case law showing that plaintiffs regularly seek and recover more than $75,000, which shows that $75,000 is a reasonable and conservative estimate for such damages.  *See id.* ¶¶ 42, 48.  For punitive damages, Burberry argues that California juries have delivered substantial punitive damage awards in employment discrimination cases, which makes $75,000 a reasonable estimate for such damages.  *See id.* ¶¶ 43, 48.  For statutory penalties, Burberry points to Plaintiff's request for a statutory penalty for her retaliation claim, which totals $10,000.  *See id.* ¶¶ 44, 48.  For attorneys' fees, Burberry highlights that Plaintiff seeks an unspecified amount of attorneys' fees that are based on violations of the FEHA and Labor Code, which would amount to $30,000.  *See id.* ¶¶ 45–47, 48.  Overall, Burberry asserts that a conservative estimate of the amount in controversy is at least $270,100.  *See id.* ¶ 48.  Defendants supply this same information in their opposition brief.  *See* Doc. No. 22 at 25–30.

In her motion to remand, Plaintiff argues Defendants failed to establish the required amount in controversy.  *See* Doc. No. 19 at 17.  Plaintiff claims the Complaint does not state that she values the case being worth more than $75,000.  *See id.*  Plaintiff argues that Defendants "failed to set forth any admissible evidence to support the statement that the amount in controversy exceeds $75,000."  *See id.*

A defendant who removes a case to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)).  Section 1446(a) parallels Rule 8(a)'s general pleading requirement.  *Id. Compare* 28 U.S.C. § 1446(a), *with* Fed. R. Civ. P. 8(a).  If the plaintiff challenges the

defendant's asserted amount in controversy, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. at 88 (citing 28 U.S.C. § 1446(c)(2)(B)).

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Zeto v. BMW of N. Am., LLC*, No. 20-cv-1380-GPC-KSC, 2020 WL 6708061, at *4 (S.D. Cal. Nov. 16, 2020) (quoting *Lewis*, 627 F.3d at 400). To determine the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Park v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-00242-BAS-MSB, 2020 WL 3567275, at *2 (S.D. Cal. July 1, 2020) (quoting *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012)). To satisfy the preponderance of the evidence threshold to establish jurisdiction, courts consider "facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.'" *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (quoting *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)). Conclusory allegations are insufficient. *Matheson*, 319 F.3d at 1090–91.

In response to the itemized list of damages used to show the amount in controversy, Plaintiff fails to provide information to sustain its conclusory argument. Plaintiff argues that Defendants lack any evidence to support the amount in controversy requirement. *See* Doc. No. 19 at 18. However, Plaintiff clearly overlooks Defendants' breakdown of the amount in controversy in the Notice of Removal. *See* Doc. No. 1 at 39–48. Plaintiff fails to provide counterargument or counterevidence to rebut Defendants' asserted amount in controversy. Instead, Plaintiff relies on conclusory argument that fails to address the information in the Notice of Removal. *See* Doc. No. 19

at 17–19.  Overall, Plaintiff does not genuinely contest Defendants' amount in controversy arguments.

Even if the Court were to construe Plaintiff's argument as a genuine challenge to Defendants' asserted amount in controversy, Plaintiff's argument remains unavailing.  In the event of a plaintiff challenging a defendant's amount in controversy, both sides provide proof and the court decides whether the amount in controversy requirement is satisfied by a preponderance of evidence.  *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. at 88; *see also* 28 U.S.C. § 1446(c)(2)(B)).  Here, in response to the information supplied in Defendants' Notice of Removal and opposition brief, Plaintiff fails to provide any nonconclusory information in its motion and failed to file a reply brief.  Therefore, the Court is left with the information in Defendants' Notice of Removal and opposition brief.

As to economic damages, Plaintiff requests "past and future lost income and benefits."  Compl., Prayer for Relief; *see also id.* ¶ 26.  Defendants supply a declaration by Burberry's "Vice President, Brand Protection – Global," who states Plaintiff's final position with Burberry "was a full-time position in which she generally worked between 36–40 hours per week and earned $25.00 per hour," which amounts to minimum weekly earnings of $900.  Mendez Decl., Doc. No. 1-3 ¶ 5.  Defendants argue that Plaintiff's Complaint places $80,100 in controversy.  *See* Doc. No. 1 ¶ 40 ("Thus, by taking a conservative approach and limiting Plaintiff's lost wages to the period from May 20, 2019 through the date of removal (back pay only), Plaintiff's Complaint has placed approximately *$80,100* in controversy ($900 per week x 89 weeks)."); *see also Tiffany v. O'Reilly Auto. Stores, Inc.*, No. CIV. S-13-0926 LKK/KJN, 2013 WL 4894307, at *3 (E.D. Cal. Sept. 11, 2013) (conducting a similar calculation).  Plaintiff does not challenge the information provided in the declaration or the calculation of lost wages.  Thus, Plaintiff's lost past and future wages place at least $80,100 in controversy, which alone satisfies the amount in controversy requirement.

As to emotional distress damages, Plaintiff requests damages caused by emotional distress. *See* Compl. ¶¶ 27, 35, 42, 47, 59, Prayer for Relief.  Emotional distress damages may be considered when determining the amount in controversy.  *Plata v. Target Corp.*, No. CV 16-5190 PSG (MRWx), 2016 WL 6267913, at *3 (C.D. Cal. Oct. 25, 2016).  "To establish the amount of emotional distress in controversy, a defendant may introduce evidence of jury verdicts in other cases."  *Id.* (quoting *Cain v. Hartford Life & Acc. Ins. Co.*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012)).  Defendants argue that California juries regularly award emotional distress damages in excess of $75,000.  *See* Doc. No. 22 at 27 (citing several examples).  Plaintiff does not challenge Defendants' offered examples.  Thus, Plaintiff's emotional distress allegations plausibly places at least $75,000 in controversy.

As to punitive damages, Plaintiff seeks punitive damages based on Defendants' alleged "oppression, fraud, malice and [] conscious disregard of Plaintiff's rights." Compl. ¶ 28; *see also id.* ¶¶ 36, 48, 60, 64, Prayer for Relief.  "It is well established that punitive damages are part of the amount in controversy in a civil action."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *see also Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).  Defendants additionally point to punitive damage awards that exceed $75,000 in employment actions.  *See* Doc. No. 22 at 28 (citing several examples).  Plaintiff does not challenge Defendants' offered examples or argument regarding punitive damages.  Thus, Plaintiff's desired punitive damages places $75,000 in controversy.

As to statutory penalties, Plaintiff requests a civil penalty of $10,000 for each violation of her Labor Code claim.  *See* Compl. ¶ 53 (citing Cal. Lab. Code § 1102.5(f)). Penalties are considered in determining the amount in controversy.  *See Collier v. ULTA Salon, Cosms. & Fragrance, Inc.*, No. CV 18-8700-R, 2018 WL 6567695, at *3 (C.D. Cal. Dec. 12, 2018) (including Plaintiff's sought $10,000 in penalties under Cal. Lab.

Code § 1102.5 in the amount in controversy).  Plaintiff does not challenge Defendants'
argument.  Thus, Plaintiff's Labor Code claim places at least $10,000 in controversy.

As to attorneys' fees, Plaintiff requests attorneys' fees based on her FEHA and
Labor Code causes of action.  *See* Compl. ¶¶ 29, 37, 43, 65, Prayer for Relief.  Attorneys'
fees—including future attorneys' fees—must be included in the amount in controversy.
*See Fritsch*, 899 F.3d at 788, 793, 794.  The FEHA claims and Labor Code Cal. Lab.
Code § 1102.5 claim authorize an attorneys' fee award.  *See* Cal. Gov't Code § 12965(b);
Cal. Lab. Code § 1102.5(j); *see also Hancock v. United Parcel Serv., Inc.*, 324 F. App'x
632 (9th Cir. 2009) (affirming an attorneys' fee award under FEHA).  Defendants put
forth a conservative estimate of Plaintiff's counsel's attorneys' fees amounting to
$30,000.  *See* Doc. No. 1 ¶ 47 ("Conservatively assuming that Plaintiff's counsel charges
$300 per hour, attorneys' fees would total $75,000 after 250 hours of work.   Even
assuming the most conservative figure of 100 hours, at $300 per hour, Plaintiff's alleged
entitlement to attorneys' fees places at least *$30,000* in controversy.").  Defendants
additionally point to attorneys' fees awards that exceed $30,000.  *See* Doc. No. 22 at 29
(citing several examples).  Aside from Plaintiff relying on inapplicable authority that
ignores Ninth Circuit precedent regarding the inclusion of attorneys' fees in determining
the amount in controversy, *see* Doc. No. 22 at 29, Plaintiff does not dispute Defendants'
attorneys' fees estimate or provide evidence that her attorneys charge a different rate.
Thus, the Court finds that Plaintiff's attorneys' fees place at least $30,000 in controversy.

Accordingly, based on a preponderance of the evidence, the Court finds that the
amount in controversy requirement is easily satisfied.  Taking together Defendants'
conservative estimates of economic damages, emotional distress damages, punitive
damages, statutory penalties, and attorneys' fees, Plaintiff places at least $270,100 in
controversy.

### 4. Whether Plaintiff is Entitled to Attorneys' Fees

Plaintiff appears to request attorneys' fees and costs as well as sanctions; however,
this request is made in Plaintiff's table of contents, and she does not appear to argue for

the request in her motion. *See* Doc. No. 19 at 2. Defendants respond that Plaintiff failed to make such request. *See* Doc. No. 22 at 31.

According to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The standard for awarding fees is based on the "reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

The Court declines to award Plaintiff any fees and costs as a result of Defendants removing the action to this Court for two reasons. First, Plaintiff's motion to remand is unsuccessful. Second, Plaintiff fails to argue for attorneys' fees and costs in her motion. A mere request for fees and costs in the table of contents without any argument is insufficient. *See* Fed. R. Civ. P. 7(b)(1)(B) ("A request for a court order must be made by motion. The motion must: . . . state with particularity the grounds for seeking the order . . . . ."). Accordingly, the Court **DENIES** Plaintiff's request for attorneys' fees and costs to the extent she makes such request.

## C. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand.

### III. MOTION TO COMPEL ARBITRATION

## A. Legal Standard

The Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* The Supreme Court has stated that the FAA espouses a general policy favoring arbitration agreements. *AT&T Mobility v. Concepcion*, 563 U.S. 333, 339 (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See id.*

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *see also* 9 U.S.C. § 4. If the Court finds that the answers to both questions are "yes," then the Court must compel arbitration. *Chiron Corp.*, 207 F.3d at 1130. A court's circumscribed role in making these inquiries "leav[es] the merits of the claim and any defenses to the arbitrator." *Id.* at 1131 (quoting *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).

As to the first inquiry—whether the parties agreed to arbitrate—courts adopt a standard similar to summary judgment. *See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991); *Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1097 (S.D. Cal. 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017). Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must apply ordinary state law principles in determining whether to invalidate an agreement to arbitrate. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002). As such, arbitration agreements may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Concepcion*, 563 U.S. at 339 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). In assessing whether there is an agreement to arbitrate, the presumption and policy in favor of arbitration do not apply, and instead, the issue is determined through standard contract law principles. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002).

As to the second inquiry—whether the agreement encompasses the dispute at issue—courts resolve any "ambiguities as to the scope of the arbitration clause itself . . .

in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475–76 (1989); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").  Moreover, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000).  Absent contractual ambiguity, "it is the language of the contract that defines the scope of disputes subject to arbitration." *Waffle House, Inc.*, 534 U.S. at 289.

**B. Discussion**

Defendants argue that the Court should compel Plaintiff to arbitrate her claims pursuant to the "Arbitration Policy/Agreement" ("Agreement").  *See* Doc. No. 13-1 at 2; *see also* Doc. No. 13-3 at 7–12 (providing the Agreement).  Defendants claim that Plaintiff received the Agreement, which stated that she would be bound by it unless she opted out within thirty days.  *See id.*  Defendants assert that Plaintiff reviewed the Agreement, signed a confirmation that she received and reviewed the Agreement, and did not complete and return the opt out form.  *See id.*  Additionally, Defendants contend that Plaintiff's causes of action—both against Burberry and Moore—are covered by the Agreement.  *See id.*  Finally, Defendants add that the Agreement is enforceable and not unconscionable.  *See id.* at 12.

Plaintiff responds by challenging her signature on the Agreement.  *See* Doc. No. 18 at 6.  Plaintiff further asserts that the Agreement is unenforceable because Plaintiff had no agreement with Moore.  Alternatively, Plaintiff appears to argue that the Agreement is unenforceable because it is unconscionable.  *See id.* at 14.  Finally, Plaintiff argues that the Court should deny Defendants' motion pursuant to California Code of Civil Procedure § 1281.2(c).  *See id.* at 6.

The Court proceeds by assessing whether a valid arbitration agreement exists and whether it encompasses the dispute at issue.  *See Kilgore*, 718 F.3d at 1058 (quoting *Chiron Corp.*, 207 F.3d at 1130).

**1. Whether a Valid Arbitration Agreement Exists**

**i. Contract Formation**

Through Burberry's Manager of HR Reward & Payroll, Defendants put forth evidence to show that Plaintiff agreed to the terms of the Agreement.  *See* Trenta Decl., Doc. No. 13-3.  Plaintiff responds that Defendants' evidence does not prove that Plaintiff signed the Agreement.  *See* Doc. No. 18 at 11.  Plaintiff takes issue with the Adobe Sign Document History and argues that it does not demonstrate Plaintiff signed the Agreement when compared with Moore's electronic signature page.  *See id.*  Plaintiff questions why this page was not submitted for Plaintiff and speculates that she could have typed anything into the signature block.  *See id.* at 12.  Essentially, Plaintiff appears to argue that Defendants' evidence is insufficient to show that Plaintiff signed the Agreement.  In their reply brief, Defendants argue that Plaintiff's argument lacks evidentiary support and is based on conjecture.  *See* Doc. No. 20 at 3, 5.  Defendants contend that an arbitration agreement may be electronically signed and alternatively argue that Plaintiff's acceptance of the Agreement may be implied in fact.  *See id.* at 3, 6.

The California Civil Code provides that "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person."  Cal. Civ. Code § 1633.9(a).  The "act" "may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."  *Id.*  This "[is] not a difficult evidentiary burden to meet."  *Ruiz v. Moss Bros. Auto Grp.*, 181 Cal. Rptr. 3d 781, 788 (Ct. App. 2014).  To attribute an electronic signature to a purported signatory, the following information supplied through a declaration is sufficient: (1) security precautions showing that the signature could only be placed using a unique username and password, (2) the steps the signatory would need to take to place the signature, (3) the date and time of the

signature, and (4) a statement that the signature was therefore placed by the purported signatory. *See Espejo v. S. California Permanente Med. Grp.*, 201 Cal. Rptr. 3d 318, 329 (Ct. App. 2016); *Ruiz*, 181 Cal. Rptr. 3d at 788.

Defendants satisfied their burden to show that Plaintiff electronically signed the Agreement. The following evidence reveals that Plaintiff accepted the terms of the Agreement. Burberry hired Plaintiff on October 13, 2014, and Plaintiff was terminated effective May 20, 2019. *See* Trenta Decl., Doc. No. 13-3 ¶ 3. When she was hired, Plaintiff's full name was Liubov Mekhontseva. *See id.* During her employment in April 2016, Burberry implemented a new arbitration policy, which "require[ed] both employees and [Burberry] to arbitrate all claims arising out of the employees' employment with Burberry unless an existing employee opts out of the arbitration policy and agreement within 30 days of its receipt." *Id.* ¶ 4. Burberry announced the new policy to Plaintiff and other employees around April 8, 2016 "through an email sent by Burberry via a computer program, Adobe Sign, used to electronically send and track documents." *Id.*

The e-mail included information about the arbitration program, such as a copy of the Agreement, an "Optional Arbitration Policy/Agreement Opt Out Form" ("Opt Out Form"), and a questions and answers packet regarding the Agreement. *See id.*; *see also* Doc. No. 13-3 at 7–21 (providing these documents). In the e-mail, Burberry asked the recipients to electronically acknowledge receipt and review of the Agreement and other documents through Adobe Sign, which "electronically tracks the user history of the arbitration policy documents sent by email to each Burberry employee (including Ms. Dias), including the exact date and time the documents are created, emailed, viewed, and signed." Trenta Decl., Doc. No. 13-3 ¶ 5. Defendants include a copy of Plaintiff's "Adobe Sign Document History." *See id.*; *see also* Doc. No. 13-3 at 23 (providing Plaintiff's Adobe Sign Document History). Plaintiff's Adobe history reveals that she "received the arbitration packet by email on April 8, 2016, viewed it on April 8, 2016 beginning at 8:24:07 PM GMT, and electronically signed the acknowledgement through Adobe Sign the same day at 9:01:42 PM GMT." Trenta Decl., Doc. No. 13-3 ¶ 5; *see*

Doc. No. 13-3 at 23.  The history also includes the IP address used by Plaintiff.  *See* No. 13-3 at 23.  Plaintiff's electronic signature appears as Liubov Mekhontseva, which was her legal name at the time of signing.  *See* Trenta Decl., Doc. No. 13-3 ¶ 5; Doc. No. 13-3 at 23.  To view the e-mail and sign the Agreement, Plaintiff needed to use her unique identification and password.  *See* Trenta Decl., Doc. No. 13-3 ¶ 6.

Defendants' declaration states "[Plaintiff's] signature could only have been placed on the arbitration agreement by her, using her unique login ID and password for the Burberry work email account assigned to her."  *Id.*  To opt out of the Agreement, Plaintiff needed to sign and date the Opt Out Form provided with the Agreement and return it within thirty days.  *See id.* ¶ 7.  Plaintiff did not complete the Opt Out Form.  *See id.* ¶ 8.

Moore also received the arbitration packet, which contained the Agreement, and he electronically signed the Agreement on June 8, 2016.  *See id.* ¶ 9; *see also* Doc. No. 13-3 at 25 (providing Moore's signature page to the Agreement).  Moore did not have the option to opt out of the Agreement because he began employment with Burberry after April 1, 2015.  Trenta Decl., Doc. No. 13-3 ¶ 9.

Instead of putting forth any disputing evidence, Plaintiff relies on unavailing conjecture and speculation.  As noted above, Defendants have satisfied their evidentiary burden.  The Court finds Plaintiff accepted the terms of the Agreement.  Accordingly, the Court finds that a valid arbitration agreement exists.

### ii. Contract Defenses – Unconscionability

To attack the enforceability of the Agreement, Plaintiff appears to argue that the Agreement is unconscionable.  *See* Doc. No. 18 at 13–15.  Plaintiff argues that Defendants did not supply the e-mail that contained the Agreement and other documents.  *See id.* at 14.  Plaintiff again takes issue with the Agreement and signature when compared to Moore's electronic signature page.  *See id.* at 15.  Defendants contend that there is no procedural unconscionability because the Agreement states that acceptance is not mandatory and Plaintiff could have opted out of arbitration.  *See* Doc. No. 20 at 10 (citing Doc. No. 13-3 at 12, 15, 17–21).  Defendants assert that "Plaintiff cites no legal

authority to support her argument that it was procedurally unconscionable to provide her with the Agreement over a year into her employment." *Id.*  Further, Defendants argue that Plaintiff improperly attempts to shift her burden to prove unconscionability.  *See id.*  Finally, Defendants emphasize that Plaintiff does not address substantive unconscionability.  *See id.* at 11.

A general contract defense of "unconscionability . . . may operate to invalidate arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).  The party asserting that an agreement is unconscionable bears the burden of proof.  *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 749 (Cal. 2015) (citing *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 205 (Cal. 2013)).  Both procedural and substantive unconscionability must be present for a court to refuse to enforce a contract. *See Armendariz v. Found Health Psychcare Servs.*, 6 P.3d 669, 690 (Cal. 2000). California courts apply a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  However, courts cannot apply principles of unconscionability in a way that undermines the FAA's objective "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 563 U.S. at 344.

### a. Procedural Unconscionability

The procedural unconscionability analysis focuses on the circumstances surrounding the creation of a contract and the presence of "oppression or surprise." *Gatton v. T-Mobile USA, Inc.*, 61 Cal. Rptr. 3d 344, 352 (Ct. App. 2007) (citing *Armendariz*, 6 P.3d at 690).  In doing so, a court must uncover "the manner in which the contract was negotiated and the circumstances of the parties at that time." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003) (quoting *Kinney v. United HealthCare Servs., Inc.*, 83 Cal. Rptr. 2d 348, 352–53 (Ct. App. 1999)).  Oppression results from "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Gatton*, 61 Cal. Rptr. 3d at 352 (citing *Flores v.*

*Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Ct. App. 2001)).  Surprise arises when the "agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms."  *Id.* (citing *Stirlen v. Supercuts, Inc.*, 60 Cal. Rptr. 2d 138, 145 (Cal. Ct. App. 1997)).  Procedural unconscionability typically takes the form of an adhesion contract, which is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it."  *Gutierrez v. Autowest, Inc.*, 7 Cal. Rptr. 3d 267, 275 (Ct. App. 2003) (quoting *Armendariz*, 6 P.3d at 689).  However, an adhesive contract term not being read or understood "does not justify a refusal to enforce it"; rather, the imposed term can only be denied if it is also substantively unreasonable.  *Id.*; *see also Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) ("[T]he California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable.").

Here, Plaintiff has not met her burden to show procedural unconscionability.  Despite Plaintiff's argument, Defendants provide detailed evidence showing how Burberry sent the Agreement to its employees.  *See* Trenta Decl., Doc. No. 13-3; Doc. No. 13-3 at 7–25.  Plaintiff's unsupported speculation is insufficient to show oppression or surprise.  As to oppression, Plaintiff does not supply the Court with a declaration or other evidence to show an inequality of bargaining power.  *Cf. Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 915–16 (Cal. 1997) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061, 1072 (Cal. 1996)) ("[A] party opposing the petition [to compel arbitration] bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.").  As to surprise, Plaintiff does not argue that the Agreement's terms were hidden.  Defendants supply evidence that Burberry included not only the Agreement and Opt Out Form but also a questions and answers sheet that answers some of the main questions employees would have regarding the policy.  Doc. No. 13-3 at 7–21 (providing these documents).

In sum, Plaintiff has not brought forth any meaningful evidence to show procedural unconscionability.  "The issue of unconscionability is not an abstract one, but rather requires an examination of the actual facts."  *See Gonzales v. Charter Commc'ns, LLC*, 497 F. Supp. 3d 844, 851 (C.D. Cal. 2020).  The declaration submitted by Plaintiff's counsel lacks evidence to support a finding of procedural unconscionability.  *See* Fradkin Decl., Doc. No. 18 at 19–20.  Instead of relying on evidence, Plaintiff rests upon attorney argument.  *Cf. Flaherty v. Warehousemen, Garage & Serv. Station Emp. Local Union No. 334*, 574 F.2d 484, 486 n.2 (9th Cir. 1978) (stating that legal memoranda, oral argument, and allegations are not evidence for the purposes of a motion for summary judgment and do not create issues of fact); *Engalla*, 938 P.2d at 916 (noting that the trial court considers *evidence*—such as "all the affidavits, declarations, and other documentary evidence, as well as oral testimony"—to determine whether an arbitration agreements exists and whether there is a defense).  Without providing any meaningful evidence, Plaintiff's challenge fails.  *See Gonzales*, 497 F. Supp. 3d at 851 ("In the absence of any meaningful evidence, the Arbitration Plaintiffs' challenge must fail.").

### b. Substantive Unconscionability

The substantive unconscionability analysis focuses on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience."  *Ingle*, 328 F.3d at 1172 (quoting *Kinney*, 83 Cal. Rptr. 2d at 353).  Courts evaluate substantive unconscionability "as of the time the contract was made."  *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 122 (Ct. App. 1982).  The "shock the conscience" standard requires more than a contract term that "merely gives one side a greater benefit."  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012).  "Substantive unconscionability may be shown if the disputed contract provision falls outside the nondrafting party's reasonable expectations."  *Parada*, 98 Cal. Rptr. 3d 759 (citing *Gutierrez*, 7 Cal. Rptr. 3d at 275).

Here, Plaintiff's failure to show procedural unconscionability forecloses her unconscionability defense.  *See Armendariz*, 6 P.3d at 690 (stating that both procedural

*and* substantive unconscionability are necessary to successfully raise an unconscionability defense); *Gonzales*, 497 F. Supp. 3d at 853 ("The failure to prove procedural unconscionability is fatal to the Arbitration Plaintiffs' claim."); *Prizler v. Charter Commc'ns, LLC*, No. 3:18-cv-1724-L-MSB, 2019 WL 2269974, at *4 (S.D. Cal. May 28, 2019) (declining to analyze substantive unconscionability where the court found there was no procedural unconscionability). Even if Plaintiff had shown some degree of unconscionability, Plaintiff has not shown the necessary, significant degree of substantive unconscionability required under the sliding scale. *Armendariz*, 6 P.3d at 690 (providing the sliding scale framework for assessing different degrees of procedural and substantive unconscionability); *see also Doe v. Steele*, No. 20-cv-1818-MMA (MSB), 2021 WL 927363, at *7 (S.D. Cal. Mar. 11, 2021); *Gonzales*, 497 F. Supp. 3d at 853.

Regarding the terms of the Agreement, Plaintiff does not argue that any specific terms are one-sided as to shock the conscience. *See* Doc. No. 18 at 14–15. Further, Plaintiff does not dispute Defendants' argument from their motion that the Agreement's terms are fair. *See* Doc. No. 13-1 at 15–17 (referring to specific terms of the Agreement). Therefore, Plaintiff does not carry her burden to show substantive unconscionability.

### iii. Conclusion

Defendants provide the Court with the Agreement, which sets forth the terms of arbitration. Plaintiff challenges the validity of the Agreement on the basis of contract formation and unconscionability. Defendants have provided sufficient evidence to show that Plaintiff signed the Agreement, and Plaintiff has not carried her burden to show unconscionability. Accordingly, Court finds that a valid arbitration agreement exists.

### 2. Whether the Arbitration Agreement Encompasses the Dispute at Issue

Defendants argue that the Agreement covers Plaintiff's claims against both Burberry and Moore. *See* Doc. No. 13-1 at 11; *see also* Doc. No. 20 at 7. Specifically, as to Moore, Defendants contend that the Agreement encompasses Plaintiff's claim against Moore because the Agreement covers disputes where "the other person is also covered by th[e] Agreement and the dispute arises from or relates to employment" and he is a third-

party beneficiary.  Doc. No. 13-1 at 12 (quoting Doc. No. 13-3 at 8); *see* Doc. No. 20 at 8.  In is unclear whether Plaintiff disputes that Agreement encompasses the dispute as to Burberry.  However, Plaintiff argues that the Agreement does not encompass her claims against Moore because she never entered into an agreement with him.  *See* Doc. No. 18 at 6, 17.

To assess the scope of the arbitration provisions, the applicable parts of the Agreement are as follows:

> Any legal disputes, claims or controversies ("Claims") an employee may have against the Company or the Company may have against an employee must be submitted to and resolved by arbitration instead of the courts, whether or not such claims arise out of an employee's employment or termination. . . .  Arbitration is the exclusive forum for the resolution of such disputes, and the parties mutually waive their respective right to a trial before a judge or jury in federal or state court or before a government agency in favor of arbitration under this Agreement . . . .  The disputes covered under this Agreement include any dispute between an employee and any other person where: (1) the employee seeks to hold the Company liable on account of the other person's conduct or (2) the other person is also covered by this Agreement and the dispute arises from or relates to employment, including termination from employment, with the Company.  The disputes covered under this Agreement also include any dispute the Company might have with a current or former employee which arises or relates to employment.  A dispute is based on a legal claim and is subject to the Agreement if it arises from or involves a claim under federal, state, or local statute, ordinance, regulation, or common law doctrine, including, but not limited to, claims for [list of claim types, which include tort, harassment, discrimination, retaliation, wrongful termination in violation of public policy, and statutory claims].

Doc. No. 13-3 at 8–9.

Plaintiff brings claims against Burberry and Moore for (1) sex discrimination under Cal. Gov't Code § 12940(a), (2) pregnancy discrimination under Cal. Gov't Code § 12945, (3) failure to prevent discrimination under Cal. Gov't Code § 12940(k), (4) failure to engage in an interactive process under Cal. Gov't Code § 12940(n), (5)

retaliation under Cal. Lab. Code § 1102.5, (6) intentional infliction of emotional distress, and (7) wrongful termination in violation of public policy.  *See* Compl. ¶¶ 22–65. Plaintiff does not argue that its claims against Burberry fall outside the scope of Agreement.  Thus, the Court finds that the Agreement encompasses Plaintiff's claims against Burberry.

The Agreement also encompasses Plaintiff's claims against Moore.  Moore can enforce the Agreement as a third-party beneficiary.  "In California, 'exceptions in which an arbitration agreement may be enforced by or against nonsignatories include where a nonsignatory is a third party beneficiary of the agreement.'"  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (9th Cir. 2013) (footnote omitted) (quoting *Nguyen v. Tran*, 68 Cal. Rptr. 3d 906, 909 (Ct. App. 2007)); *see also* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."); *Ronay Fam. Ltd. P'ship v. Tweed*, 157 Cal. Rptr. 3d 680, 685 (2013) ("[A] third party beneficiary of an arbitration agreement may enforce it.").  To compel arbitration, "the third-party must be 'more than incidentally benefitted by the contract.'"  *Collins v. BMW of N. Am., LLC*, No. 20-cv-1635-GPC (AGS), 2021 WL 242938, at *3 (S.D. Cal. Jan. 25, 2021) (quoting *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 145 Cal. Rptr. 448, 450 (Ct. App. 1978)).  Additionally, "[i]t is 'not necessary that the beneficiary be named and identified as an individual.  A third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made.'"  *Ronay Fam. Ltd. P'ship*, 157 Cal. Rptr. 3d 686 (quoting *Garratt v. Baker*, 56 P.2d 225, 226 (Cal. 1936)).

Moore satisfies his burden to show that he is a third-party beneficiary to the Agreement.  *See Murphy*, 724 F.3d at 1233.  Moore is a member of the class of persons the Agreement was designed to benefit because the Agreement covers

> any dispute between an employee and any other person where: (1) the
> employee seeks to hold the Company liable on account of the other person's

1
2
3

> conduct or (2) the other person is also covered by this Agreement and the dispute arises from or relates to employment, including termination from employment, with the Company.

4   Doc. No. 13-3 at 8.  At minimum, Plaintiff's dispute with Moore arises from and relates

5   to her employment with—and appears identical to her claims against—Burberry, and

6   Moore is covered by the Agreement.  *See* Compl. ¶¶ 22–65; Trenta Decl., Doc. No. 13-3

7   ¶ 9; Doc. No. 13-3 at 25.  Thus, the Court finds that Moore can enforce the Agreement

8   against Plaintiff to compel arbitration and the Agreement encompasses Plaintiff's claims

9   against Moore.

10      Accordingly, the Court finds that the Agreement encompasses the dispute at issue

11   against both Burberry and Moore.

12   **3. Whether the "Third Party Exception" Under Cal. Civ. Proc. Code**

13   **§ 1281.2(c) Calls for the Court to Refuse Enforcement of the Arbitration**

14   **Agreement**

15      Even if there is an Agreement between Plaintiff and Burberry, Plaintiff argues that

16   the Court should not compel arbitration under California Code of Civil Procedure

17   § 1281.2(c) because Moore is a third party that is involved in the same issues and there is

18   a possibility of conflicting rulings.  *See* Doc. No. 18 at 17.  Defendants respond that

19   section 1281.2(c) does not apply.  *See* Doc. No. 20 at 9.

20      Under section 1281.2(c),

21

22   > the court shall order the petitioner and the respondent to arbitrate the
23   > controversy if it determines that an agreement to arbitrate the controversy
24   > exists, unless it determines that . . . (c) [a] party to the arbitration agreement
25   > is also a party to a pending court action or special proceeding with a third
26   > party, arising out of the same transaction or series of related transactions and
27   > there is a possibility of conflicting rulings on a common issue of law or fact.

26

27   Cal. Civ. Proc. Code § 1281.2(c).  "Section 1281.2(c) addresses the peculiar situation that

28   arises when a controversy also affects claims by or against other parties not bound by the

arbitration agreement."  *Mount Diablo Med. Ctr. v. Health Net of California, Inc.*, 124 Cal. Rptr. 2d 607, 617 (Ct. App. 2002).  The statute provides the following options if the conditions of section 1281.2(c) are satisfied:

> the court (1) may refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding.

*Id.*

Section 1281.2(c) does not apply here.  "The [FAA] does not include a provision comparable to section 1281.2(c) and therefore requires courts to enforce written arbitration agreements even if there is pending litigation involving a third party that may result in conflicting rulings."  *Acquire II, Ltd. v. Colton Real Est. Grp.*, 153 Cal. Rptr. 3d 135, 143 (Ct. App. 2013).  However, "parties are free to enter into contracts providing for arbitration under rules established by state law rather than under rules established by the FAA."  *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) (citing *Volt Info. Scis., Inc.*, 489 U.S. at 479).  Thus, section 1281.2(c) only applies if the parties incorporated it into the Agreement.  *See id.* at 1210; *see also Steele*, 2021 WL 927363, at *7 (denying a motion to compel arbitration under section 1281.2(c) where the parties explicitly and unambiguously incorporated "California Code of Civil Procedure sections 1280 through 1294.2" into the arbitration provisions).

Plaintiff offers no argument or evidence that the Agreement incorporated section 1281.2(c).  The Agreement states that "[c]laims shall be resolved through binding arbitration to be administered by the American Arbitration Association (the 'AAA'), in accordance with its Employment Arbitration Rules and Mediation Procedures (the 'AAA Rules') then in effect, except as otherwise modified herein."  Doc. No. 13-3 at 10.

Plaintiff does not explain how the parties intended California procedural rules to govern their arbitration where the Agreement explicitly incorporates the AAA Rules. The Agreement does not manifest the parties' intent to incorporate the California Arbitration Act, including section 1281.2(c). Accordingly, section 1281.2(c) does not apply, and Plaintiff cannot invoke it to avoid its contractual arbitration obligations. *See Diamond Foods, Inc. v. Hottrix*, LLC, No. 14-cv-03162-BLF, 2018 WL 3008562, at *8 (N.D. Cal. June 15, 2018).

### 4. Whether to Dismiss or Stay the Action

Defendants argue that the Court should dismiss or stay the action pending the outcome of arbitration. *See* Doc. No. 13-1 at 17–18. Plaintiff responds that a stay would be appropriate because of her claims against Moore. *See* Doc. No. 18 at 6.

"A district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (citing *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)); *see also Velarde v. Zumiez, Inc.*, No. 20-cv-1358-MMA (MDD), 2020 WL 4921980, at *4 (S.D. Cal. Aug. 21, 2020) (quoting *Delgadillo v. James McKaone Enterprises, Inc.*, No. 1:12-cv-1149 AWI MJS, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012)) ("Once a court determines that an arbitration clause is enforceable, it has the discretion to either stay the case pending arbitration or to dismiss the case if all of the alleged claims are subject to arbitration."); *see also Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1165, 1169 (N.D. Cal. 2011).

Here, all of Plaintiff's claims against both Burberry and Moore are subject to arbitration. *See supra* Section III.B.2. Accordingly, the Court finds that dismissal of the action is appropriate. *See Delgadillo*, 2012 WL 4027019, at *3.

### C. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' motion to compel arbitration.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand and **GRANTS** Defendants' motion to compel arbitration.  Therefore, the Court **ORDERS** the parties to proceed to arbitration in accordance with the terms of the Agreement and **DISMISSES** this action.  The Court **DIRECTS** the Clerk of Court to close the case.

**IT IS SO ORDERED**.

Dated: June 8, 2021

Hon. Michael M. Anello
United States District Judge

21-cv-192-MMA (JLB)